**EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRANDON S. BLAIR,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER, JAMES GALLAGHER, CHIEF OF POLICE FOR CITY OF WORCESTER, PETER TOWLER, THOMAS DOWD, DANIEL DOWD, THOMAS C. DUFFY, EDWARD MCGINN, MOORE, THOMAS, FALCONE, and ORTIZ,<br><br>    Defendants. | Civil Action No.<br>02-40152-FDS |
| RICHARD N. TOUSIGNANT,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER, et al.,<br><br>    Defendants. | Civil Action No.<br>02-40153FDS |

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTIONS FOR
DEFAULT JUDGMENT, TO FILE A SUPPLEMENTAL AFFIDAVIT, AND
FOR A HEARING, AND CERTAIN DEFENDANTS' CROSS-MOTIONS TO DISMISS**

SAYLOR, J.

    This is a consolidated civil rights action brought under 42 U.S.C. § 1983 and various state law theories. Plaintiffs Brandon S. Blair and Richard N. Tousignant allege that the City of

Worcester, former Worcester Chief of Police James Gallagher, and Officers Peter Towler, Thomas Dowd, Daniel Dowd, Thomas C. Duffy, Edward McGinn, James Moore, "Thomas," "Falcone," and Jose Ortiz[1] of the Worcester Police Department violated their federal and state constitutional rights and committed common-law torts in connection with their arrest and filing of criminal charges. Before the Court are (1) plaintiffs' motions for default judgment; (2) plaintiffs' motions for an evidentiary hearing; (3) plaintiffs' motions for leave to file supplemental affidavits; (4) defendants' cross-motions to dismiss the action with prejudice; and (5) defendant Thomas Dowd's motion for failure to state a claim upon which relief can be granted.

This case involves a pattern of serious inattention and neglect by plaintiffs and their counsel. The complaints were filed in August 2002. Service of process was attempted—although, as will be discussed below, not achieved—in November of that year as to seven of the eleven defendants. Service was attempted on an eighth defendant in June 2004. Essentially, nothing else has ever happened in the case. Because the service of process was not sufficient, and because the delays have been extraordinary and unwarranted, dismissal of the claims is required.

Accordingly, and for the reasons stated below, the Court will deny plaintiffs' motions, grant defendants' motions to dismiss for insufficient service of process, and deny defendant Dowd's motion for failure to state a claim as moot. The dismissal of this case shall be without prejudice.

I.   **Factual Background**

---

[1] Plaintiffs do not provide the first names of officers Moore, Thomas, Falcone, and Ortiz in their pleadings. Subsequent filings by defendants appear to supply the first names of officers Moore and Ortiz, but not of officers Thomas and Falcone.

2

The facts are set forth in the light most favorable to plaintiffs.[2]

On the night of December 23, 2001, Blair and Tousignant were together in a Worcester club talking and dancing. At approximately 1:45 a.m. they decided to leave. As they were driving out of the parking lot, they decided to return so that Tousignant could use the club's restroom. They drove to the front of the club and parked; Blair waited in the car while Tousignant went back into the club. While inside, Tousignant witnessed a "melee," during which he saw the police beating a man who appeared to him to be subdued. He shouted to the police to stop the beating. He was then was asked to leave the club, which he did. Back inside the car, he told Blair what he had seen. In the meantime, police officers parked their cruisers so that the car was blocked. Blair and Tousignant got out of the car. After a brief conversation with an officer, both men were "jumped upon from behind by several officers," knocked to the ground, and handcuffed. They were then transported to the Worcester police station, where they were booked on criminal charges. The police officers drove to the station in a reckless way so that the men were deliberately tossed about inside the vehicle. Both men claim to have suffered serious physical and emotional injuries as a result of the beatings and the manner of their transport.

The trial on the criminal charges was held in July 2002. According to plaintiffs, certain exculpatory evidence was destroyed when defendant officers wrongfully erased a portion of a videotape that depicted the physical condition and demeanor of the plaintiffs at the booking. Nevertheless, they were acquitted of all charges.

---

[2] With only a few minor differences, the substance of Blair's and Tousignant's pleadings are identical. Although Blair's pleading is confusing as to whether he alleges that he suffered the same unlawful treatment as Tousignant with regards to the charges, prosecution, and cover-up, for purposes of this Memorandum, the Court will assume that Blair's and Tousignant's claims are identical.

3

The amended complaints assert ten counts. The first seven are against nine individual police officers—Peter Towler, Thomas Dowd, Daniel Dowd, Thomas Duffy, Edward McGinn, James Moore, "Thomas," "Falcone," and Jose Ortiz—and allege the following: (1) violation of plaintiffs' Fourth, Eighth, and Fourteenth Amendment rights as secured by 42 U.S.C. § 1983; (2) wrongful arrest; (3) false imprisonment; (4) assault and battery; (5) malicious prosecution; (6) intentional infliction of emotional distress; and (7) abuse of process. Count eight is brought against James Gallagher, seeking to hold him vicariously liable as chief of police for the acts of the nine named officers. Count nine is for municipal liability and supervisory liability under 42 U.S.C. § 1983. Count ten is for negligence against both the municipality and the officers.

## II.  Procedural History

On August 16, 2002, W. Theodore Harris, Jr., who was then an attorney licensed to practice law in the Commonwealth, filed separate complaints with this Court on behalf of Blair and Tousignant. Although filed and docketed separately, the complaints were the same in all material respects, asserting the same causes of action and prayers for relief. The complaints stated that plaintiffs were suing each officer in his individual capacity, except for James Gallagher, Chief of Police, who was sued in both his individual and official capacities. Because the subsequent history of the two cases is identical, the Court will refer to both actions in the singular for the sake of convenience.

On the date the complaint was filed, summonses issued from the Court as to all defendants. On December 2, 2002, returns of service as to seven of the officers—Towler, Thomas Dowd, Daniel Dowd, Duffy, McGinn, Moore, and Ortiz—were filed with the Court. All seven returns of service indicate that process was served on November 25, 2002. The returns

indicated that the complaint and summons was served by Deputy Sheriff Ronald E. Richard. In its entirety, the Deputy Sheriff's certification states as follows:

> I hereby certify and return that on 11/25/2002 at 11:59 AM I served a true and attested copy of the Summons, Complaint and Jury demand in this action in the following manner: To wit, by delivering in hand to KATHERIN [sic] MCNAMARA, agent, person in charge at the time of service for [officer name] at WORCESTER POLICE DEPARTMENT, 9-11 LINCOLN SQ, WORCESTER, MA. Fees: Service 25.00, Travel 0.00, Conveyance 0.00, Total fees: $25.00.

The summonses indicated that answers were due twenty days after service, or by December 15, 2002.

From the filing of the returns on December 2, 2002, until January 8, 2004—a full thirteen months later—the case lay dormant. None of the defendants filed answers or any other responsive pleadings. Plaintiffs did not serve the four remaining defendants (the City of Worcester, Chief of Police James Gallagher, Thomas, or Falcone). No discovery or motion practice of any kind occurred during that period.

On January 8, 2004, the clerk of this Court sent a notice to Attorney Harris pursuant to Local Rule 41.1 that the case would be dismissed after 30 days for want of prosecution. On February 2, 2004, Attorney Stephen M. CampoBasso filed a notice of appearance on behalf of plaintiffs and filed a motion requesting in substance that the case not be dismissed. Attorney CampoBasso did not explain the reason for the lack of activity in the case; however, he stated that (1) summonses for the case had been issued; (2) "[s]ome, but not all [of the summonses] were served and returned to the Court;" (3) plaintiffs were "not aware" of the provisions of Local Rule 41.1; and (4) plaintiffs "intend[] to proceed with the prosecution of this case in good faith." The Court (Gorton, J.) granted the motion a few days later, and the case was not dismissed.

5

Approximately six weeks later, on March 22, 2004, Attorney Harris filed his motion to withdraw as attorney, which the Court (Gorton, J.) allowed.[3]

On March 25, 2004, Attorney CampoBasso filed a motion on plaintiffs' behalf for leave to amend the complaint to include allegations concerning the presentment requirement of Mass. Gen. Laws ch. 258, § 4. The Court (Gorton, J.) allowed this motion, and an amended complaint was filed with the Court on April 30, 2004.[4]

At the request of Attorney CampoBasso, a summons then issued as to defendant "James Gallagher, Chief of Police for City of Worcester." On July 8, 2004, a return of service as to Gallagher was filed with the Court. The return of service indicated that Chief of Police Gallagher was served on June 29, 2004 by Constable William E. George. The return of service contained several pre-printed boxes. The box corresponding to "[s]erved personally upon the defendant" was not checked. Instead, the box corresponding to "[o]ther (*specify*):" was checked. Typed onto the lines following this box was the following certification:

> by leaving said copies [of the Summons and complaint] with Jennifer Tauper, the agent in charge, at his/her last and usual place of business to wit: Worcester Police Dept., 9-11 Lincoln Square, Worcester, MA 01608.

The summons indicated that an answer was due within twenty days, or by July 19, 2004.

Other than to prevent the dismissal for want of prosecution, amend the complaint, and

---

[3] The Second Affidavit of Theresa Labriola, submitted by plaintiffs, states that on March 2, 2004, Attorney Harris was suspended from the practice of law for eighteen months for violating the Massachusetts Rules of Professional Conduct by "making a false statement of material fact or law to a tribunal and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation." The suspension took effect on April 1, 2004. Plaintiffs do not allege that the conduct for which Attorney Harris was suspended involved their case in any way.

[4] The amended complaint as filed did not allege that the presentment requirement of Mass. Gen. Laws ch. 258, § 4 had been satisfied, even though plaintiffs' motions for leave to amend their original complaints indicated that the purpose for the amendment was to include such allegations.

attend to service on Gallagher, Attorney CampoBasso took no action to prosecute the case. Again, no answers or other responsive pleadings were filed by any defendant.

On February 7, 2005—a little more than one year after entering his appearance in this case—Attorney CampoBasso died. At that point, the case had languished without prosecution for nearly two and a half years.

Finally, on April 18, 2005, Attorneys Jo Ann Citron and Michael Altman filed appearances for the plaintiffs. On April 26, 2005, plaintiffs moved for a default judgment pursuant to Fed. R. Civ. P. 55 against the eight defendants as to whom returns of service were filed. The motion for default judgment contends that the returns of service establish "that service was proper pursuant to Fed. R. Civ. P. 4" and that the served defendants have failed to respond to the pleading during the applicable time period. The motion and a supporting affidavit were served by mail on Attorney Donald Rider of the City of Worcester Law Department that same day.[5]

All defendants have cross-moved to dismiss the case for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), on the grounds that service was defective as to all defendants and, as to Gallagher, untimely. Specifically, defendants contend that they have not been served in person or at their home and that neither Katherine McNamara nor Jennifer Tauper were their agents for receiving process, either by appointment or as a matter of law. In addition,

---

[5] All but one of the defendants (Thomas Dowd) are represented by Attorney Rider. The Second Affidavit of Theresa Labriola states that, before filing the motion for default judgment, Attorneys Citron and Altman contacted Attorney Rider

> to determine why the Defendants had not filed an answer. Attorney Rider informed [plaintiffs'] counsel that no answers had been filed because the summonses and complaints were served upon a secretary at the Worcester Police Department. [Plaintiffs'] counsel then asked Rider if he would accept service on behalf of the Defendants who had not been served and agree not to contest service on the other Defendants. Attorney Rider did not respond to this request.

7

defendant Thomas Dowd moved to dismiss for failure to state a claim upon which relief can be granted on Counts 10 (negligence) and 7 (abuse of process), pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs have indicated that they do not oppose the dismissal of the complaint against James Gallagher without prejudice, and accordingly it will be dismissed. Plaintiffs have otherwise opposed the motion to dismiss. They have further requested (1) if the Court finds that service was improper, that they be permitted to take discovery on service of process issues; and (2) if they are not allowed discovery, that they be permitted an extension of time under Fed. R. Civ. P. 4(m) to effectuate proper service. Finally, plaintiffs filed no response to Thomas Dowd's motion to dismiss. Because the Court will dismiss the complaint against Thomas Dowd on other grounds, that motion will be denied as moot.

### III. Analysis

#### A. Plaintiffs' Motion for Default Judgment

Plaintiffs have moved under Fed. R. Civ. P. 55 for default judgments against eight defendants on the grounds that they have failed to answer or otherwise respond to the complaint. A default judgment may not enter for failure to plead or otherwise defend unless the defendant was properly served with process. *M&K Welding, Inc. v. Leasing Partners, LLC*, 386 F.3d 361, 364 (1st Cir. 2004); *Precision Etchings & Findings, Inc.*, 953 F.2d 21, 23 (1st Cir. 1992). Plaintiffs have the burden of proving proper service. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).

Plaintiffs contend that service was proper under Fed. R. Civ. P. 4(e)(2). That rule permits, among other things, service upon an individual "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

8

The purported agent in this case is Katherine McNamara. An agency relationship between her and the eight defendants need not be explicit, but it must nonetheless be proved. *See* 10A CHARLES A. WRIGHT & DR. ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1097 (2002) ("The federal courts look to the circumstances of the agency relationship, and although authority to accept process need not be explicit, it must either be express or implied from the type of relationship that has been established between the defendant and the alleged agent."). The fact that Ms. McNamara purported to accept service on behalf of the defendants is not sufficient to prove an agency relationship; because apparent authority may not be created by acts of the agent, there must be evidence that defendant himself intended to confer such authority on the agent. *See MW Ag., Inc. v. New Hampshire Ins. Co.*, 107 F.3d 644, 647 (8th Cir. 1997); Restatement (Third) of Agency § 2.03 (Tentative Draft No. 2, 2001).

Defendants deny that they appointed Ms. McNamara as their agent for the purpose of receiving process or that she was designated as such by law. According to Ms. McNamara's affidavit, she is the Principal Clerk in the Chief's Office of the Worcester Police Department. Her affidavit states that she has

> not been authorized or appointed by Peter Towler, Thomas Dowd, Daniel Dowd, Thomas C. Duffy, Edward McGinn, James Moore or Jose Ortiz to accept service of process on their behalf for lawsuits in which they are being sued, whether in their individual capacity or their official capacity, and [she] was not so authorized or appointed by them in November 2002.

Plaintiffs do not directly challenge Ms. McNamara's affidavit. Instead, they contend that the Worcester Police Department had a "custom or practice" of accepting summonses and complaints naming individual officers, and that the WPD routinely accepted service without objection. This, according to plaintiffs, establishes that employees of the Office of the Chief of

9

Police had implied and apparent authority to accept such service. Plaintiffs offer two pieces of evidence in support of this contention: (1) WPD Policy and Procedure No. 351, entitled "Revenue Management"; and (2) the attestation of Theresa Labriola, an attorney employed by Altman & Citron, that Deputy Sheriff Richard told her that "[i]t has been the custom of the Worcester County Sheriff's Office to serve all summonses and complaints naming individual Worcester Police Officers at the Office of the Chief of Police, unless a home address is provided by the plaintiff."

WPD Policy and Procedure 351 states that its purpose is to provide guidelines for the "acceptance and receipt of monies received by any police personnel or units within the [WPD]." The policy—which is four pages long, and is primarily concerned with the handling of money in the department—contains the following statements: "All summonses received by the [WPD] shall be recorded in the office of the Chief of Police. The summons and travel fee shall be forwarded to the officer named in the summons." This provision appears to be directed principally to the acceptance of summonses and fees for police officers to appear as witnesses (which presumably happens with considerable frequency). Even if it is interpreted as applying to the service of process in civil lawsuits, there is nothing in the policy to suggest that any of the seven officers actually appointed Ms. McNamara as their agent for service of process on them as individuals.

Likewise, the hearsay statement that the sheriff's department claims to have routinely served WPD officers in this way does not establish that the individual defendants intended to appoint Ms. McNamara as their agent. There is no evidence that the individual officers (as opposed to the department, institutionally) ever agreed to such an agency relationship.

Plaintiffs also argue that Ms. McNamara, not Deputy Sheriff Richard, actually effected

10

service, arguing that "[t]he foremost component of proper service is whether a copy of the summons and complaint have been delivered personally to the Defendant Police Officers pursuant to Federal Rule 4(e)(2), not who signed the return of service."[6] It is not clear from the record, however, that Ms. McNamara in fact handed the documents to defendants personally, as opposed to leaving them in some place accessible to them such as an employee mailbox. In any event, even if she did, a co-employee of a defendant cannot unwittingly become the plaintiff's process server. "[P]ersonal service of a summons to a party through a co-employee does not constitute sufficient service unless the co-employee is the agent of the party to be served." *Richards v. New York State Dep't of Correctional Svcs.*, 572 F. Supp. 1168, 1173 (S.D.N.Y. 1983). This is true even if the co-employee personally hands the summons and complaint to the defendant. *But see James v. Jersey City*, 187 F.R.D. 512, 516 (1999) (default judgment not vacated even where service of police officer at police department not made in accordance with Rule 4(e)(2); police officer obtained the summons and complaint and turned it over to his attorney who then arranged for an extension of time to answer).

Plaintiffs request that, should the Court find that there is insufficient evidence of proper service, the Court should nevertheless grant them leave to conduct discovery to prove an agency relationship between Ms. McNamara and defendants. This request, however, appears to be little more than a grasp at straws to uncover some evidence of agency; plaintiffs have not offered any realistic prospect that they will be able to do so. *See United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001) (party seeking jurisdictional discovery must first show

---

[6] Because Ms. McNamara is at least 18 years of age and not a party, she is potentially a suitable process server under Rule 4(e)(2).

11

colorable claim, including why jurisdiction would be found if discovery were permitted); *Bloomquist v. Albee*, 2004 WL 1920701, at *7 (D. Me. Aug. 26, 2004) (jurisdictional discovery not merited on personal jurisdiction issue where plaintiff's assertion of defendant's contacts with forum state was based only on "utter speculation"); *Hickory Travel Sys. Inc. v. TUI AG*, 213 F.R.D. 547, 555 (N.D. Cal. 2003) (court declined to allow jurisdictional discovery where plaintiff was far in fact and law from establishing sufficiency of service based on agency and veil-piercing theory); *Mateo v. M/S Kiso*, 805 F. Supp. 792, 796 (N.D. Cal. 1992) (abrogated on other grounds) ("Plaintiffs have no right to an evidentiary hearing on the issue of agency when they have presented no evidence to create a disputed issue of fact regarding agency.").[7]

In short, the service of process on the eight police officers was obviously insufficient, and there is no reason to believe that discovery will uncover facts to the contrary. The motion for default judgment for failure to answer will therefore be denied.

### B.    Defendants' Motion to Dismiss

Defendants moved to dismiss the complaint for insufficiency of service of process under Fed. R. Civ. P. 12(b)(5). When the sufficiency of process is challenged, the party on whose behalf service was made has the burden of establishing its validity. *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992); *Hickory Travel*, 213 F.R.D. at 551; *Lensel Lopez v. Cordero*, 659 F. Supp. 889, 890 (D.P.R. 1987).

Defendants argue that, under Fed. R. Civ. P. 4(m), a plaintiff must properly serve a defendant within 120 days of filing his complaint. As is clear from the foregoing, plaintiffs failed

---

[7] Although plaintiffs filed a motion for leave to file a supplemental affidavit, they did not state what specific information their supplemental affidavit would contain and how it would bear on the case. In any event, the Court did allow supplemental briefing, and plaintiff filed a supplemental memorandum on February 2, 2006.

12

to properly serve the defendants with the summons and complaint in this time period.[8] Rule 4(m) provides for dismissal of the complaint without prejudice if the plaintiff failed to effect service within the 120-day period. However, a party who shows good cause for his failure is entitled to an additional appropriate period of time during which to effect service. *Id.*[9]

### 1. Good Cause

Plaintiffs have not shown good cause for their failure to sufficiently serve defendants within the 120-day period. The returns of service are insufficient on their faces to establish proper service of process under Rule 4(e).[10] No explanation has been provided for the huge lapse of time—more than two and one-half years—from the filing of the complaint to the first serious effort to prosecute the case. It should have been obvious early on—from the failure of *all* defendants to file *any* answer or other response—that there was an issue concerning service of process. Furthermore, the defendants were not evading process, or ensconced in a remote foreign nation; they were city employees who should have been relatively easy to find and serve.

Plaintiffs point to the unhappy circumstances under which their first two counsel ended

---

[8] This is true whether the Court considers the first complaint or the amended complaint as the operative pleading. The Court notes that, because defendants were not in default, under Fed. R. Civ. P. 5(a) the amended complaint should have been served on defendants. *See, e.g., D'Angelo v. Porter*, 221 F.R.D. 289, 292 (D. Mass. 2004).

[9] The Advisory Committee Notes to the 1993 amendments to the rule state that the court is authorized "to relieve a plaintiff of the consequences of [failure to effect service in the prescribed 120 days] even if there is no good cause shown" such as, for example, "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."

[10] The returns of service do not indicate that defendants were served in person, or that service was left at their homes with some person of suitable age and discretion residing therein. Rather, the returns indicate that service was made "by delivering in hand to KATHERIN[E] MCNAMARA, agent, person in charge at the time of service for [officer name] at WORCESTER POLICE DEPARTMENT." Although Ms. McNamara is described as "agent," no facts of the agency relationship are set forth in the returns. Clearly, the bare statement that Ms. McNamara was the "person in charge at the time of service" at the WPD is insufficient to establish agency.

their associations with this case. However, is no showing has been made that the activities for which Attorney Harris was suspended, or that any physical or mental illness of Attorney CampoBasso, was the cause of the faulty service or the failure to follow up. Moreover, plaintiffs had no apparent difficulty retaining successor counsel. Utter inaction, without apparent reason, does not amount to good cause that would entitled the plaintiffs to an additional appropriate time to attempt to effect service. *See Benjamin v. Grosnick*, 999 F.2d 590, 591 (1st Cir. 1993) (no good cause where wrong complaint was served). The fact that the limitations period may have expired on plaintiffs' federal claims does not dictate a contrary result under the circumstances.[11]

### 2. Exercise of Discretion

From late 2002 until April 2005, this case was scarcely prosecuted for no good reason. Again, the evidence before the Court does not suggest that the long delay was caused either by the fact of the suspension of the first attorney or the death of the second attorney. After receiving the Local Rule 41.1 notice in January 2004, plaintiffs were placed on notice that the case had been inactive for at least a year and was at risk of dismissal. However, other than to avoid the dismissal and attend to a minor amendment of the complaint and the (improper) service of Gallagher, nothing whatsoever in the record suggests that plaintiffs actually proceeded with the prosecution of this case.

The Court is aware that the procedural rules are intended to promote the ends of justice, not simply to interpose hurdles to valid claims. Nonetheless, those rules cease to have meaning if they are ignored without consequence. The Court is also fully cognizant of the fact that the

---

[11] In this regard, the Court notes that the tolling provision of 28 U.S.C. § 1367(d) may operate to save any otherwise time-barred state law claims, and accordingly plaintiffs may be able to re-file their claims in state court.

plaintiffs in this case may be barred from prosecuting entirely meritorious claims for technical reasons. At some point, however, plaintiffs themselves—not just their attorneys—must be held fully accountable for the assiduous pursuit of their claims. There is no evidence before the Court to suggest that plaintiffs were unaware of, or were misled as to, the lack of progress of their cases. At a minimum, the extraordinary delay in the early prosecution of the case should have caused plaintiffs to investigate the cause of that delay and to take appropriate action.

To their credit, the third set of attorneys appear to have done all they could to save this case from its prior neglect. But by that time it was too late. The facts that plaintiffs appear to have colorable claims and defendants were, at least at some point, on actual notice of the lawsuits does not convince the Court to exercise its discretion otherwise. The time to perfect service will not be extended, and defendants' motion under Rule 12(b)(5) motion will be granted.

### IV. Conclusion

For the reasons stated in the foregoing memorandum:

(1) Plaintiffs' motions for default judgment at to James Gallagher, Peter Towler, Thomas Dowd, Daniel Dowd, Thomas C. Duffy, Edward McGinn, James Moore and Jose Ortiz are DENIED;

(2) The motion of defendant Thomas Dowd to dismiss is GRANTED in part and DENIED in part as moot;

(3) The motion of defendants James Gallagher, Edward McGinn, Peter Towler, Daniel Dowd, Thomas C. Duffy, James Moore and Jose Ortiz to dismiss is GRANTED;

(4) Plaintiffs' motion for leave to file a supplemental affidavit to plaintiff's motion for default and to plaintiff's opposition to defendant's motion to dismiss is DENIED as moot; and

15

(5)     Plaintiffs' motion for a hearing is DENIED as moot.

The dismissal of this case is without prejudice.

**So Ordered.**

/s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge

Dated: March 13, 2006

16